Van Brunt, P. J.
It may not be necessary to add anything to the opinion which was handed down upon the decision of the demurrer in the court below; but it may be proper to call attention to the fact that part of the contract, damages for the breach of which this action was brought to recover, was to furnish evidence to establish the claim of the defendant in a litigation to be commenced. It is clear that' such a contract is against public policy. The recognition of contracts of this character would be *532 the introduction of all sorts of fraud and deception in proceedings before courts of justice, in order that parties might receive compensation out of the results of their successful manufacture of proofs to be presented to the court, thus holding out 'a premium upon subornation. The mere statement of the proposition seems to .show that such a contract could never be recognized in any court of justice.
The judgment should be affirmed, with costs.
The opinion of Mr. Justice O’Brien at special term is as follows:
.The complaint alleges that the defendant was the owner of certain shares of stock which, by false representations, he was induced to give an option upon ; that plaintiff, subsequently meeting defendant, informed him of the fraud that had. been perpetrated upon him to induce him to part with his stock, which the complaint alleges was entirely, unknown to such defendant; that plaintiff procured the evidence, and furnished it to defendant, so that he was fully satisfied of the fraud, but that, due to the financial inability of the defendant at tho-t time to employ counsel and to pay the necessary disbursements to prosecute a suit to recover his stock, the plaintiff, on the defendant’s suggestion, entered into an agreement by which he (plaintiff) undertook, in consideration of receiving one-tenth of the amount recovered, to aid him in the employment of counsel and to furnish the money for disbursements, and obtain the evidence to establish defendant’s claim; that pursuant to such agreement he did employ counsel, advance moneys, expend time in preparing the suit and furnishing evidence ; and that, as a result thereof, suit was commenced by the defendant, who subsequently received in settlement of such suit a certain sum, none of which he paid to plaintiff, and to recover one-tenth of which, under the agreement alleged, this suit was brought. •
It is true that champerty and maintenance are abolished in this state, except so far as preserved by the Revised Statutes, and what remains would not literally touch an agreement such as is here sought to be enforced. Apart, however, from any statutory prohibition, there can be no question but that such an agreement would have been- void at common law; and, in addition to the illegality under the early statutes in this state relating to maintenance and champerty, such an agreement was made a crime. The penalty with the offense having been repealed, and no express statute existing which in terms decrees that an agreement of the character alleged is illegal, it yet remains to be determined whether such an agreement can be enforced. Having in mind the fact that it is void at common law, I do not see upon what ground its legality can be placed, unless some express sanction or authority can be found in some statute or decision which would give it support. Such agreements directly tend to promote litigation, to disturb the peace of individuals, and are directed to subverting the settled policy of this state, which, as shown by the history of the enactments on the subject, more particularly those applicable *533 to attorneys (§§ 73 and 74 of the Code) has sought to prevent the stirring up of strife and litigation. Here, concededly, an entire stranger to the transaction obtruded himself into it, and not only-instigated a suit, but agreed to procure counsel and maintain the suit, the fruits of which, if successful, be was to share; and, more than this, be undertook to furnish the evidence upon which the recovery was to be assured. Such an agreement is repugnant to every instinct of propriety and justice, and the portion of it which provides for pay as a consideration for procuring evidence should be regarded as immoral, illegal, and void. Unless, therefore, some sanction or authority can be found for its enforcement, or some statute legalizing such an agreement is shown to exist, the rule as it existed at common law should prevail. I have been referred to no statute and to no decision, either in England or in this country, by which such an agreement has been sanctioned. The plaintiff relies upon the case of Fowler v. Callan, 102 N. Y. 395; 1 St. Rep. 1; but that, as shown by the facts stated in the opinion, was a case wherein it appeared that the defendant, as devisee under a will, was entitled to certain real estate which was-imperiled in some manner by threatened proceedings before the surrogate, and “made a defense essential to its protection. In this emergency he sought the aid and professional services of the plaintiff, and retained him as an attorney. The latter neither sought the retainer nor did anything to induce it. So far as it appears, it was not occasioned by any offer or solicitation of his, but originated in the free and unbribed choice of the client. The evidence does not show whether the defendant had gained possession of the land devised or was out of possession, but he gave to the attorney a deed of the one undivided half part of the property, taking back his covenant to conduct the defense to its close, paying all costs and expenses of the litigation, and indemnifying the devisee against all such liability.” The validity of the agreement was upheld upon the distinct ground, as shown by the sentence in the opinion that follows those above quoted, that “the agreement appears to have been purely one for compensation. * * * The contract in no respect induced the litigation. That was already begun, and existed independently of the agreement, and originated in other causes.” And, as enforcing this ground, the opinion closes with the following language: “But our conclusion rests more strongly upon the conviction that the agreement made was one for compensation merely, and had in it no vicious element of including litigation or holding out bribes for a retainer.” It is true that in that case it was a question between client and attorney, where the client approached the attorney in the first instance; but there can be no doubt that if, as stated by the court, the elements had been present showing that the attorney had induced the litigation, or had held out a bribe for the purpose -of securing a retainer, the judgment would have been different. The present case differs from that in all its essential features. Here was a layman, who, as stated, was a stranger to the transaction, and who forced himself upon the attention of the defendant with a statement of his ability, in consideration of a percentage of the recovery, to employ *534 counsel, instigate the litigation, pay the necessary disbursements, and procure the evidence; thus introducing every vicious element. Were it not for the abolition of the statutes relating to maintenance and champerty, this agreement would be both illegal and criminal, and it is one such as has never received the approval or sanction of any court. In my opinion, such an agreement cannot be enforced, and should be condemned, for which reason the demurrer to the complaint should be sustained, upon the ground that such complaint does not state facts sufficient to constitute a cause of action, and judgment absolute should be ordered for the defendant, with costs.